IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 14-20769-CR-HUCK

UNITED STATES OF AMERICA,

                    Plaintiff,         MAY 4, 2015
                                        8:56 A.M.

     vs.

JOHNNY JEAN,

                    Defendant.      PAGES 1 THROUGH 30

_____

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:    Ms. Ilham A. Hosseini, AUSA
                        Ms. Tonya R. Long, AUSA
                        OFFICE OF U.S. ATTORNEY
                        99 N.E. 4th Street
                        Miami, Florida  33132

FOR THE DEFENDANT:    Mr. Daryl E. Wilcox, AFPD
                        FEDERAL PUBLIC DEFENDER'S OFFICE
                        One East Broward Boulevard
                        Suite 1100
                        Fort Lauderdale, Florida  33301-1842

COURT REPORTER:       Carly L. Horenkamp, RMR, CRR
                        U.S. DISTRICT COURT
                        400 N. Miami Avenue, Room 12-3
                        Miami, Florida  33128
                        (305) 523-5147

1      (Open Court, 8:56 a.m.)

2           THE COURT:  Good morning.  We're here in the matter of

3      United States of America versus Johnny Jean.

4           May I have appearances, please, first for the

5      government.

6           MS. HOSSEINI:  Good morning, Your Honor.  Ilham

7      Hosseini and Tonya Long on behalf of the United States.

8           MR. WILCOX:  Good morning, Your Honor.  Daryl Wilcox,

9      Assistant Federal Public Defender, on behalf of the defendant

10     in this case, Johnny Jean.  He is present in court, seated next

11     to me at the defense table.

12          THE COURT:  Good morning, everybody.  Please be

13     seated.

14          And we have from probation?

15          PROBATION OFFICER:  Yes, good morning, Your Honor,

16     Marilys Martinez for probation standing in for Wendy Squitero.

17          THE COURT:  All right.  Good morning.

18          First of all, Mr. Wilcox, have you discussed with your

19     client the contents of the presentence investigation report,

20     the addendum, and advised him he has a right to file

21     objections?

22          MR. WILCOX:  Yes, Your Honor.

23          THE COURT:  I notice some objections were in fact

24     filed here.  Let's start with the presentence investigation

25     report's calculation of the offense level and the criminal

1   history.  We start off with a proposed total offense level of

2   34 and a criminal history category of VI, and that gives an

3   advisory guideline range of 262 to 327, correct?

4            MR. WILCOX:  According to the presentence

5   investigation report, Your Honor, that is how the probation

6   officer calculated the guidelines.  Of course --

7            THE COURT:  As a starting point, right?

8            MR. WILCOX:  That's correct.

9            THE COURT:  Government agrees?

10           MS. HOSSEINI:  Yes, Your Honor.

11           THE COURT:  Okay.  And we have, assuming that the --

12  let's see.  We have several objections, the first of which is,

13  acceptance of responsibility.  The probation office did not

14  give from John Jean, pronounced -- is it Jean?  Jean?

15           THE DEFENDANT:  Jean.

16           THE COURT:  Okay.  Did not give Mr. Jean the benefit

17  of a two-level reduction for acceptance of responsibility.

18  This is a case that while it went to trial, ostensibly it was

19  only for the purpose of preserving the right to appeal the

20  judge's ruling on the suppression motion.  Right?

21           MR. WILCOX:  That is correct, Your Honor.

22           THE COURT:  The government seems to agree that

23  Mr. Jean should be entitled to that.

24           MS. HOSSEINI:  Yes, Your Honor.

25           THE COURT:  Okay.  Yes, I recall this case.  This is

1    the case where Mr. Jean agreed to plead guilty fairly early on,

2    set it down for a change of plea hearing, changed his mind,

3    wanted new counsel, agreed to change his plea again, and then

4    it finally went to trial without a plea agreement, correct?  Do

5    I have that correct?  There were two attempts to try to get

6    this case resolved by a plea and then they fell through, then

7    we had the non-jury trial.

8             MS. HOSSEINI:  That is correct, Your Honor.

9             MR. WILCOX:  Yes, Your Honor.

10            THE COURT:  Okay.  Well, I think -- I mean, this isn't

11   the most compelling case for giving an acceptance of

12   responsibility, but I think under the circumstances I'm going

13   to give Mr. Jean the benefit of that doubt and give him the

14   two-level reduction for acceptance of responsibility, which

15   would take it down to offense level of 32, which equates to a

16   proposed advisory guideline range of 210 to 262 months in

17   prison, correct?

18            MS. HOSSEINI:  Yes, Your Honor.

19            MR. WILCOX:  Yes, Your Honor.

20            THE COURT:  Okay.  And then we have another issue

21   here.  Let me turn to it.  The next objection is to the

22   report's proposal that Mr. Jean be held accountable for -- I

23   think it's a five-level increase based on possession of a

24   firearm in connection with a crime of violence.

25            Okay.  I read the objection, I read the government's

1     report.  Is there anything you want to add, Mr. Wilcox?

2          MR. WILCOX:  Yes, Your Honor.  The government and the

3     probation officer seem to rely on the fact that Mr. Jean was

4     arrested at the burglary, had been committed at the victim's

5     house and the firearm was in possession shortly thereafter.

6     However, Your Honor, I would submit to the Court that there's

7     no evidence that Mr. Jean entered the dwelling while in

8     possession with the firearm.

9          Certainly the government could -- there may -- I

10    think, you know, the government may want to infer that, but I

11    think they have to have some direct evidence that he was

12    actually in -- that he actually entered the residence with the

13    firearm, and there's no evidence of that.  The only evidence is

14    that after he decided to leave that area, he was traveling away

15    from the area at the time he was arrested, he was in a

16    direction away from the victim's residence, he was no longer

17    stalking the victim.  The burglary that he apparently -- that

18    there is evidence that he committed had already been committed.

19    And again, Your Honor, there's no evidence that he had the

20    firearm in his possession during that burglary, or that he

21    entered the home with the firearm.  Or that even -- I guess

22    it's conceivable that he obtained the firearm between the time

23    he committed the burglary and the time he was arrested.

24          THE COURT:  Ms. Hosseini, do you want to comment?

25          MS. HOSSEINI:  Yes, Your Honor.  There is nothing more

1  compelling than a defendant's own videotaped confession which

2  was introduced into evidence at trial; also came up at the

3  suppression hearing.  Mr. Jean himself admitted that he had

4  entered the victim's residence.

5          THE DEFENDANT:  Mr. Jean never admitted that.

6          THE COURT:  Mr. Jean, you've got a lawyer.  I don't

7  want to hear another word from you.

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  You'll have a chance to say whatever you

10  want to say.  I don't want you interrupting like that.  You're

11  not helping your case, by the way, Mr. Jean.  You understand

12  that?

13          THE DEFENDANT:  Yes, sir.

14          MS. HOSSEINI:  The property that was discovered in

15  Mr. Jean's possession in the backpack that he was carrying was

16  the victim's framed high school diploma and a set of house keys

17  that he obtained from her residence when he had broken into her

18  residence.

19          THE COURT:  What did he specifically say in his

20  post-arrest statement?

21          MS. HOSSEINI:  I'm sorry, Your Honor?

22          THE COURT:  What did he specifically say about the

23  firearm?  I know he admitted he owned -- he possessed the

24  firearm, but what did he say about --

25          MS. HOSSEINI:  He talked about --

1    THE COURT:  -- the timing of the possession?

2    MS. HOSSEINI:  I apologize.

3    He admitted that he had obtained the firearm from his

4    brother and that he'd had it for a few days and that he had it

5    with him when he was there.  And when the police intercepted

6    him, he -- they saw him earlier than when they actually

7    arrested him.  They saw him near the victim's residence, but

8    they saw him get on a bus and they did not -- because they

9    believed him to be armed, they did not approach and waited.

10   They just followed the bus through the streets until -- until

11   he disembarked from the bus, came to a parking lot, and that's

12   when the police intercepted him just because of a public safety

13   issue where they didn't want anything to happen with bystanders

14   on the bus.

15   THE COURT:  Well, also, he made the statement in one

16   of the emails that he was -- in relationship to the stalking,

17   that he was, quote, I'ma shoot you right in your blanking face,

18   I promise you that.  That's a pretty good indication that he

19   is -- plus the other things that the government has indicated

20   that he was -- the firearm was used to facilitate or had the

21   potential of facilitating another felony.

22   So it seems to me based on his statements, post-arrest

23   statements, the circumstances of the backpack with the other

24   contents, his statement on his emails, it seems pretty clear

25   that he was -- the firearm was used to facilitate or had the

1   potential of facilitating at least one other felony offense,

2   maybe two.  So I'm going to deny that objection.

3           Then we have the armed career criminal designation.

4           MR. WILCOX:  Your Honor, I'll make these -- these

5   objections are primarily made for the purpose of appellate

6   review, Your Honor.

7           THE COURT:  Of course.

8           MR. WILCOX:  But just -- I've read the case law, Your

9   Honor, but I do think that these are objections that should be

10  reviewed.  There are three objections total, Your Honor.  One

11  is I'm objecting to the use of resisting without violence as a

12  conviction -- as a violent felony.

13          THE COURT:  Let me stop you there.  They're not

14  without violence.  They're all with violence.

15          MR. WILCOX:  I'm sorry.

16          THE COURT:  I know that in your --

17          MR. WILCOX:  You're right.

18          THE COURT:  Excuse me.  In your papers you used

19  without violence, but I think you might have misspoken there.

20          MR. WILCOX:  I did.

21          THE COURT:  You meant with violence.

22          MR. WILCOX:  I did misspoke, Your Honor.  Let me see.

23          THE COURT:  And miswrote, I guess, is the other way.

24  But they're all, all three of those paragraphs, 25, 26, and 30,

25  were resisting an officer with violence; all of which, based on

1    Eleventh Circuit precedent --

2              MR. WILCOX:  Yeah.

3              THE COURT:  -- constitute crimes of violence.

4              MR. WILCOX:  Yeah, I did say without violence, Your

5    Honor.  But when I listed them in the -- when I listed the

6    crime, I did correctly identify them in my papers.  But in my

7    argument I did misspoke.  That is an error, Your Honor.  I did

8    not mean to mislead the Court.

9              THE COURT:  No, I know you didn't.

10             MR. WILCOX:  Okay.

11             THE COURT:  I know.  Not a problem.

12             MR. WILCOX:  But they are --

13             THE COURT:  Then you've got --

14             MR. WILCOX:  They are --

15             THE COURT:  Then you've got, in addition to that,

16   strong arm robbery, which clearly is a crime of violence; and

17   then you've got aggravated assault, which is clearly a crime of

18   violence.  So you've got five.

19             MR. WILCOX:  But without the resisting with violences,

20   which the Eleventh Circuit has held is a crime of -- or a

21   violent felony under the residual clause of the Armed Career

22   Criminal Act, we would submit that that clause, it should be

23   declared void for vagueness.  The Supreme Court heard argument

24   on that issue this term.  They have yet to reach a decision, or

25   at least I'm unaware that they have reached a decision with

1  respect to that issue.  So we're preserving that issue for

2  appeal.

3          The other objection would be based on the wording or

4  the definition of "violent felony," where the Armed Career

5  Criminal Act says that violent felonies include acts of

6  juvenile delinquency that involve the use of a weapon.  The

7  actual language here, "The term 'violent felony' means any

8  crime punishable by imprisonment for a term exceeding one year

9  or any act of juvenile delinquency involving the use or

10  carrying of a firearm, knife, or destructive device that would

11  be punishable by imprisonment for such term if committed by an

12  adult."

13          Now, these, I would submit to the Court that even

14  though these resisting with violence offenses and the one were

15  committed by Mr. Jean when he was 15 and 16 years old, and he

16  was waived over to adult court and he got youthful offender

17  sentences, I would still say because he was under 18 that they

18  could still be considered acts of juvenile delinquency.

19          The statute certainly doesn't make clear that acts --

20  that any juvenile that's sent over to adult court is no longer

21  an act of juvenile delinquency.  I mean, the statute certainly

22  isn't clear with respect to that.  And because the statute

23  isn't clear with that, I think the benefit of the

24  interpretation should go to Mr. Jean pursuant to the rule of

25  lenity.

1       The other -- I'll just move -- I'm going to continue.

2       THE COURT:  Does the government want to respond?  I

3  know you filed something over the weekend, which I've read.

4  Anything further you want to say?

5       MS. HOSSEINI:  No, Your Honor, aside from the fact --

6  I understand Mr. Wilcox is making the argument to preserve the

7  issue for appeal.

8       THE COURT:  I think I'm bound by the Eleventh

9  Circuit's decisions, and I think they're appropriate, so I'm

10  going to overrule that objection.

11       MR. WILCOX:  Well, Your Honor -- and I did include

12  those decisions in my argument, Your Honor.  I understand that.

13       THE COURT:  Anything else on that point?

14       MR. WILCOX:  No, Your Honor.  I want to move on to the

15  *Apprendi* objection.  I would submit to the Court that because

16  the government failed to allege the prior convictions in the

17  indictment, that the maximum penalty that could be imposed

18  under this -- upon his conviction of firearm -- of possession

19  of a firearm by a convicted felon is ten years.  And I would

20  just rely on my pleading.

21       I know that Justice Thomas has indicated that all of

22  these -- ruled that all of these cases that allow people to be

23  sentenced to 15 years without the government expressly pleading

24  or proving at trial the fact of the three prior violent

25  felonies is in violation of the *Apprendi* rule and the Fifth

1    Amendment indictment clause and the Sixth Amendment right to a

2    jury.

3            THE COURT:  Does the government want to say anything

4    further?

5            MS. HOSSEINI:  No, Your Honor, not from what's in the

6    pleadings.

7            THE COURT:  Well, I think that the law is such that

8    these prior convictions should appropriately be taken into

9    consideration.  I think that the *Apprendi* challenge, while it

10   raises some interesting issues, I think is not well founded.

11   I'm going to deny that objection as well.

12           Let's see.  Let me find my notes here.  I think that

13   takes care of all of the objections.

14           We do have a further request by the defendant for a

15   downward variance.  But other than the downward variance, is

16   there anything else that the defendant wants to raise at this

17   time?

18           MR. WILCOX:  No, Your Honor.

19           THE COURT:  Okay.  All right.  Let's talk about the

20   downward *Booker* variance.

21           MR. WILCOX:  Yeah.  At the --

22           THE COURT:  And before you do, let me give you an

23   observation so you know where I'm at.  I think, Mr. Wilcox, you

24   make a compelling argument about the criminal history.

25   Obviously -- I think obviously they qualify as crimes of

1   violence.  But if you look at the underlying facts, as you've

2   pointed out in your memorandum, they're not the egregious type

3   of violent acts that one might bring to mind when you think

4   about violent acts.  Kicking at a police officer while you're

5   being arrested, things of that nature, you know, it's obviously

6   not a good thing, but it's not one of those real heinous types

7   of violent crimes.  So I think the defendant makes a good point

8   in that regard.

9          On the other side of the coin, of the argument, is

10   Mr. Jean has shown a very strong propensity for violence one

11   way or the other, including the underlying case right here.

12   The threats he's made to the victims -- victim and the victim's

13   family.  And the firearm, threatening to shoot somebody in the

14   face, putting somebody under that kind of fear for her life and

15   the others' lives just -- that's extremely violent.  So those

16   are two things that I'm looking at.

17          Plus, I have to say this.  I'm looking at Mr. Jean

18   right now, and I get the impression he's just not a person who

19   is very much in control of himself based on what I see now and

20   what I see in the report.  That's a concern I have.  So

21   let's -- I want you to know that while I'm listening to your

22   argument.

23          MR. WILCOX:  Your Honor, you've encapsulated my

24   argument.  You encapsulated my argument.  There's not much more

25   I can add to what you said with respect to my position, Your

1   Honor.

2         I just don't think that the armed career criminal

3   statute was designed for -- had this type of defendant in mind.

4   A juvenile that fought and kicked with the police officer

5   during an arrest after grand theft.  There's one crime --

6   there's another crime where he supposedly committed this

7   robbery with an unknown chrome object, when basically he was

8   taking a go-kart -- he was stealing a go-kart and I guess the

9   victim approached him, and it's alleged that he threatened him

10  with some unknown chrome object.  And then there's this

11  incident in the juvenile facility.

12        Your Honor, I really believed that congress envisioned

13  someone -- as the Court has seemed to acknowledge, someone with

14  a more egregious type of criminal history when they designed

15  this statute.

16        The Court is aware that the Court can consider any

17  information with respect to granting a downward variance, and I

18  think that the Court should take this into consideration.  Even

19  though these are technically adult convictions, they could

20  quite easily be described as youthful indiscretions where, you

21  know, he just made bad decisions as a youth.

22        And I would submit to the Court that under all the

23  facts and circumstances, 15 years is a sufficient sentence.  It

24  promotes respect for the law.  It's not a slap on the wrist.

25  And I think that's all that is needed here, Your Honor.  He's

1   a -- he qualifies as an armed career criminal under the very

2   most technical of circumstances.  And for that reason I'd ask

3   that the Court grant the motion for variance and impose a

4   sentence of not more than 15 years.

5           THE COURT:  What about his propensity to react

6   violently in every circumstance?  I appreciate your other

7   comment, which is something I needed to observe for the record

8   as well, which was that these were when he was 15, 16, 17 years

9   old.  Hopefully -- you know, hopefully not yet at an age of

10  maturity and still had a lot to learn.

11          But, having said that, it's just this ongoing violent

12  nature that concerns me.

13          MR. WILCOX:  Your Honor, I would say to the Court that

14  he's 29 years old now.  If the Court imposes a 15-year sentence

15  and he served that, he's going to serve at least 12 on that.

16  He'll be 43 years old.  And I would submit to the Court that

17  between now and then, that's enough time to resolve any

18  propensities for violence that he may have.

19          I just -- I'm standing on the fact that I think 15

20  years is enough time to address those concerns that the Court

21  has.

22          THE COURT:  Okay.  Let me hear from the government.

23          MS. HOSSEINI:  Your Honor, we think --

24          THE COURT:  My feeling is, 15 years is a long time.

25  Most of the crimes that are the basis for the career criminal

1    designation, he was a teenager, kicking a police officer in the

2    thigh and in the chest while he was being arrested.  Not a good

3    thing, but it's not -- you know, it's not shooting at somebody,

4    it's not stabbing somebody, it's not beating up somebody.

5         Throwing a fire extinguisher, shattering glass, and

6    then throwing it in the direction of the police officer, again,

7    not a good thing and it shows propensity to act out in a

8    physical, violent way, but not something that's so outrageously

9    violent that it suggests the kind of violence that I think is

10   probably contemplated by the violent career criminal.  So

11   that's my thinking on that.

12        So tell me what you think.

13        MS. HOSSEINI:  Your Honor, we think -- the government

14   certainly appreciates the fact that Mr. Jean's convictions were

15   when he was a young man, and that's why instead of the upper

16   end of -- I can't remember what it was, I think it was 262 to

17   three something, instead of that sentence, we think a low end

18   of the guideline sentence is appropriate in this case, which is

19   now 210 months, which I believe is a little over 17, maybe 17

20   and a half years.

21        That is correct that he was a -- he was under 18 for

22   some of the convictions, but the sheer number of convictions --

23   he has seven felony convictions, five of them which are

24   qualifying, at least five which are qualifying for the ACCA.

25   And although they're not the most egregious, most violent

offenses, the conduct in itself does show, like Your Honor

said, a propensity for violence.

There's also nine arrests that are not included in the

criminal history points, including paragraph number 37, I

believe, where it was no actioned and the government

acknowledges that, but it says that paragraph number 37,

aggravated battery, the defendant struck the victim in the face

knowing she was pregnant.

So the underlying conduct in some of these cases,

albeit not the most egregious, the most violent, is violent and

there is a need to protect the public.  The underlying offense

is an example of that as well.  It's a serious offense.  The

nature and circumstances of the offense under 3553 certainly

call for a low end of the guideline sentence.

The history and characteristics of the defendant as

well.  He has 20 criminal history points.  And again, the nine

arrests are, of course, not included.  That is a pretty

extensive number of points to have for someone who is only 29

years old.

THE COURT:  Well, also taking into consideration the

fact that during a substantial portion of his adulthood, he has

been in prison.

MS. HOSSEINI:  That was my next point, Your Honor.

THE COURT:  Which was at a point where he couldn't be

committing crimes, at least typically wouldn't be committing

1    crimes.

2           And that's the difficult thing about this case.  I

3    don't know, Mr. Wilcox, I just -- I don't know.  This is a

4    tough one.  What the government says is correct.  What you say

5    is correct as well.

6           MR. WILCOX:  Your Honor, just one other -- one other

7    thing.

8           THE COURT:  Your client just doesn't seem to be able

9    to control himself.  And if he's back out on the street, you

10   know, aren't there probabilities he's going to continue his

11   ways?

12          Because he's been in prison a long time.  You know,

13   I'm trying to think.  There was a -- one of these paragraphs

14   struck me as kind of odd.  Paragraph 54 said from June 30,

15   2006, until February 2014 he was serving time in prison, in

16   state custody.  He apparently didn't learn from that

17   experience.  He's right back out and next thing you know he's

18   threatening someone with a gun, a firearm.

19          MR. WILCOX:  Eight years.  Now we're looking at 15

20   years, Your Honor.  I think that's -- that's a proportionate

21   increase based on his record.

22          THE COURT:  That's not my -- that is one of my

23   concerns, but my biggest concern -- the two biggest I've

24   already expressed.  One is I think the crimes of violence for

25   which he's being held accountable are not so egregious that are

1   the type that you would think would be the basis for crimes of

2   violence.

3        On the other hand, it's a continuum of some acts of

4   violence.  And, you know, who knows what would've happen in

5   this case had he not been arrested before he could act out on

6   his threats.  So those are the counter-balancing factors that

7   are really causing me concern here.

8        I agree with you, 15 years is a long time.  But he

9   doesn't seem to get it.  I don't think he gets right now, just

10  based on his attitude during this litigation, his attitude

11  towards you, his attitude toward the Court, and his attitude as

12  he sits there right now.  I just -- I don't feel comfortable

13  with your -- about your client.

14       MR. WILCOX:  I understand the Court's concern, but

15  Your Honor, I'll just repeat that I think 15 years is a

16  sufficient sentence that satisfy the purposes of sentencing.

17       THE COURT:  Okay.  Is there anything else in the way

18  of objection or comment about a downward variance from the

19  government?

20       MS. HOSSEINI:  No, Your Honor.  I would just like to

21  put in a note about the treatment that's recommended in the

22  PSI.  The government believes that that is a very good idea.

23       THE COURT:  Oh, I don't think there's any question

24  about that.  And I think the defendant himself, in the

25  presentence investigation report, at least it reflects that he

1    himself acknowledges that he has an anger problem and needs

2    help in that regard.  That's the one positive thing I see in

3    this with regard to that tendency toward violence, that he

4    acknowledges it.  Whether it was sincere or not, only he knows.

5          Mr. Wilcox, do you want to have the last word?  Does

6    Mr. Jean want to say anything to the Court?

7          THE DEFENDANT:  Your Honor, the only thing I want to

8    say is --

9          THE COURT:  You want to stand up and address the

10   Court?

11         THE DEFENDANT:  The only thing I want to say is me

12   being incarcerated and everybody in here looking at me as I'm a

13   violent person and if I do get out Mr. Jean is going to commit

14   another crime, Mr. Jean is going to end up doing this and this

15   and that, all this, when you look at it, it just sabotaging

16   this case here to give me a whole bunch of time, so I don't

17   have no control over it.  So it's in your hands.

18         THE COURT:  No, you do have control.  See, that's the

19   difference.  You do have control.  You've had control when you

20   came out of prison, and the first thing you did was to get

21   involved in, you know, a very serious domestic violence

22   situation.  That has nothing to do with Mr. Wilcox, the

23   government, the judge, the police.  It's you.  And if you don't

24   appreciate that, then you're going to have -- continuing to

25   have problems.  See, that's my concern, exactly what you're

1    saying now.

2          You had your chance to say.  I'm going to have my

3    chance to say.

4          You blame everybody else but yourself.  Now, I

5    understand, I've read your report, I know you haven't had the

6    best of circumstances growing up, but you have to take

7    responsibility.  You can't blame everybody else.  You can't

8    blame your girlfriend.  You can't blame Mr. Wilcox, as you

9    tried to do earlier.  You can't blame the government for

10   bringing this case against you.  And you shouldn't blame me for

11   whatever sentence I give you.  Because, as they say, you do the

12   crime, you do the time.  And that's what you don't understand.

13         And I'd love -- I really would like to say I feel

14   comfortable with you and to take Mr. Wilcox's recommendation,

15   give you the very least that I can based on the law, which

16   would be the minimum mandatory 15 years, but I don't see

17   anything that convinces me that you even understand yourself,

18   that you understand that you're the person that's causing all

19   these problems, nobody else.

20         THE DEFENDANT:  I understand where you're coming from,

21   Your Honor.  I've been trying to change.  I've been trying to

22   get help.  And I talked to my lawyer and I told my lawyer, you

23   know, I want to get out and go to anger class, anger management

24   class, and, you know, if they can help me with that, I'd be

25   more than happy to do it.

1      THE COURT:  Well, speaking of your attorney, I think

2  you owe Mr. Wilcox a very sincere apology.  I think you've

3  treated him shabbily in this case.  He's worked his fanny off

4  for you.  He's done a good job in arguing both in his papers

5  and here today in court.  I don't know what interplay you've

6  had, that's attorney-client privilege, but I know he's gone to

7  great lengths to represent you as well as he can, and I don't

8  think you appreciate what he's done for you, and that's a

9  shame.  I think you owe him a real sincere apology.  But that's

10  between you and Mr. Wilcox.

11      Anything else you want to say?

12      THE DEFENDANT:  That's it.

13      THE COURT:  All right.  Well, I -- this is a tough

14  one.  I'm very concerned about Mr. Jean's propensity for

15  violence, but I also agree with Mr. Wilcox, 15 years is an

16  awful long time and I agree that the underlying criminal

17  activity which gives rise to the minimum mandatory is such that

18  I'm going to give him the benefit of the doubt.  I'm going to

19  go below the guidelines.  And I'm going to try to put into the

20  sentence some monitoring, some treatment, some help, so that

21  when Mr. Jean comes out after a long time in prison that he's

22  not going to have the kind of violent history he's had.  Only

23  time will tell.

24      I've considered the statements of all the parties,

25  I've reviewed the presentence investigation report, and I

1  accept and adopt the findings of fact and conclusions set forth

2  in that report with the exception of the acceptance of

3  responsibility, which I have agreed with the defendant on that.

4  I have considered the advisory guidelines, together with the

5  statutory factors which are set forth in 18 United States Code

6  Section 3553(a).

7       I think a sentence below the guidelines is appropriate

8  in this case for the reasons I've articulated, maybe not so

9  clearly and maybe not so perfectly, but I do feel that 15 years

10 is a sufficient period of time to meet the -- what I consider

11 one of the most important factors, the deterrence of future

12 criminal activity.  And we're going to try to give Mr. Jean the

13 help that he obviously needs with regard to management of his

14 anger and his violence.

15      It also appears that based on his financial condition

16 he's not able to pay a fine; therefore, no fine will be

17 imposed.  Therefore, I will sentence Mr. Jean to the minimum

18 mandatory sentence of 18 [sic] months.  So it is the judgment

19 of the Court that the defendant, Johnny Jean, is committed to

20 the Bureau of Prisons to be imprisoned for a term of 180

21 months, minimum mandatory sentence.

22      Upon his release from prison, he shall be placed on

23 supervised release for a term of five years.  Within 72 hours

24 of his release from the Bureau of Prisons, he shall report

25 first to the probation office in the district into which he is

1    released.

2           While on supervised release, he shall not commit any

3    crimes, he is prohibited from possessing a firearm, other

4    dangerous device or weapon, of course any controlled substance,

5    he shall cooperate with the collection of his DNA sample, and

6    comply with the standard conditions of supervised release

7    adopted by this Court.

8           And he shall also comply with the following special

9    conditions:  I'm going to also recommend that while in prison,

10   that he have the maximum of anger control/domestic violence

11   treatment that's available while in prison, as well as

12   substance abuse treatment program.

13          While he's on supervised release, he shall also

14   participate in anger control and domestic violence treatment

15   program.  He shall comply with the standard -- I mean, a

16   substance abuse treatment program, mental health treatment

17   program, also comply with the permissible search as required

18   and noted and set forth in Part G of the presentence

19   investigation report.

20          In addition, when Mr. Jean is released from prison, he

21   shall spend the first six months in a -- I call it a halfway

22   house.  Is that the community correction facility or center?

23   Is that the right --

24          MS. HOSSEINI:  Yes, Your Honor.

25          THE COURT:  For the six months.  And then he is going

1    to be on home confinement with a monitoring device sufficient

2    for probation to monitor his home confinement, together with a

3    telephone at his home sufficient for them -- for probation to

4    monitor his home confinement.  And that is going to last until

5    further order of the Court based on Mr. Jean's successful

6    completion of his anger management, domestic violence,

7    substance abuse treatment programs, showing that he has in fact

8    gotten the point.  At that time, either I or a successor judge

9    will be revisiting his home confinement.  And if it's

10   determined that he has successfully completed that and it looks

11   like he has turned the corner, as he says he wants to do, then

12   the home confinement requirement will be eliminated.  But he'll

13   have to be in full compliance with all the terms and conditions

14   of his supervised release.

15          In addition, he is to perform community service as

16   follows:  If he is fully employed, he is to perform 400 hours

17   of community service each of the five years.  That's performed

18   on a yearly basis.  That is, he can't carry over his obligation

19   from one year to the next.  If he is not fully employed, he

20   shall perform 1,000 hours of community service each year.  And

21   if he's part-time employed, he shall perform a number of hours

22   based on -- pro rata based on his work, number of hours he

23   works.

24          He shall also pay to the United States a special

25   assessment of $100, which is immediately due and payable.

1        Therefore, the total sentence in this case is 180

2   months in prison, five years of supervised release on the terms

3   I've just outlined, and a $100 special assessment.

4        Mr. Jean, now that sentence has been imposed, do you

5   or your counsel object to the Court's findings of fact or the

6   manner in which sentence has been pronounced here this morning?

7        MR. WILCOX:  Your Honor, we renew all of our previous

8   objections, with the main objection being -- I think the one

9   that you didn't sustain was the determination that he's an

10  armed career criminal and that the weapon was used in

11  connection with violence.  We would renew those objections.

12       THE COURT:  Okay.  Just a comment:  It's unlikely he

13  would get less than 180 months regardless of that, quite

14  frankly, based on his -- just so you know and Mr. Jean knows,

15  he's getting a substantial break here this morning.  Hopefully

16  it's not -- I'm not being overly optimistic about Mr. Jean's

17  future.  Hopefully he will turn the corner.

18       The point is, if he doesn't turn the corner, he's

19  going to be in violation of his supervised release, he's going

20  to be right back in prison.  So hopefully he gets -- and

21  Mr. Wilcox, if you'd explain that to him.  I put on some -- I

22  think some help for his turning the corner, but there are also

23  some potential issues with regard to -- if he violates his

24  supervised release and doesn't turn that corner, that he's

25  going to have to face the consequences.  So I would appreciate

1  if you'd spend a few minutes explaining that to him.

2          Anyway, the government want to comment?

3          MS. HOSSEINI:  Just for the record, Your Honor, the

4  government objects to the variance.

5          THE COURT:  Okay.  I understand.  All right.

6          There was no plea agreement, so therefore, Mr. Jean, I

7  want to tell you about your right to appeal.  You have the

8  right to appeal the sentence which I've just imposed.  If you

9  desire to appeal, you must file the notice of appeal within 14

10  days after the entry of judgment against you.  If you are

11  unable to pay the costs of that appeal, the government will pay

12  for your appeal, including attorney's fees.

13          Do you understand you have those rights?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Okay.  Anything else?

16          MR. WILCOX:  Your Honor, would you recommend a Bureau

17  of Prisons facility in Florida or as near to Florida the Bureau

18  of Prisons policies and procedures would permit?

19          THE COURT:  I will recommend he be placed in a

20  facility as close to south Florida, I assume that's where you

21  want --

22          MR. WILCOX:  Yes.

23          THE COURT:  -- as is appropriate and available.

24  Anything else?

25          MR. WILCOX:  No, Your Honor.

1    MS. HOSSEINI:  No, Your Honor.

2    THE COURT:  Mr. Jean, why don't you -- Mr. Wilcox,

3    your client raised his hand.  He wants to tell you something.

4    (Off-the-record discussion.)

5    MR. WILCOX:  Your Honor, I believe that he -- Mr. Jean

6    would request that the Court appoint CJA counsel for purposes

7    of appeal.

8    THE COURT:  Why?  What's the basis for that?  See,

9    Mr. Jean, you're right back there.  You're right back where --

10   you know, I find that hard to believe.  Mr. Jean, you just

11   don't get it.  You just don't get it.

12   MR. WILCOX:  Your Honor --

13   THE COURT:  I'm not going to grant that unless there's

14   some compelling reason that I don't know about, so you tell me

15   what that compelling reason is.

16   MR. WILCOX:  Your Honor, I can't in good faith

17   articulate a compelling reason other than Mr. Jean feels that a

18   private attorney unaffiliated with the Federal Public

19   Defender's Office would do a better job on the appeal.

20   THE COURT:  If he wants to hire somebody, that's fine.

21   I think you're doing an excellent job.  Frankly, if it had not

22   been for you, Mr. Jean would not be getting the deal he's

23   gotten right now.

24   Mr. Jean, the fact you don't know that --

25   THE DEFENDANT:  I --

1          THE COURT:  Excuse me.  The fact you don't know that

2     and appreciate that tells me that I made a big mistake in

3     sentencing you this morning.  A big mistake.  And I'm going to

4     deny the motion.

5          If you want to file a motion for counsel, go ahead and

6     do it, and articulate -- set forth the reasons that you think

7     that you need a new lawyer in this case.

8          Obviously, you're not going to give Mr. Wilcox the

9     apology and the thanks that he deserves, so I'm going to do it

10    for you.  Mr. Wilcox, you've done a superior job in this case,

11    and it's unfortunate that Mr. Jean doesn't appreciate what

12    you've done for him.

13         THE DEFENDANT:  I just -- I just told Mr. Wilcox I

14    apologize, sir.

15         THE COURT:  I saw what you did.  Good luck.

16         THE DEFENDANT:  Appreciate for the sentences, sir.

17       (Proceedings concluded at 9:36 a.m.)

18                         *   *   *   *   *

19

20

21

22

23

24

25

```
1   UNITED STATES OF AMERICA                          )
                                                       ) ss:
2   SOUTHERN DISTRICT OF FLORIDA                       )

3

4                    C E R T I F I C A T E

5        I, Carly L. Horenkamp, Certified Shorthand

6   Reporter in and for the United States District Court for the

7   Southern District of Florida, do hereby certify that I was

8   present at and reported in machine shorthand the proceedings

9   had the 4th day of May, 2015, in the above-mentioned court; and

10  that the foregoing transcript is a true, correct, and complete

11  transcript of my stenographic notes.

12       I further certify that this transcript contains

13  pages 1 - 30.

14       IN WITNESS WHEREOF, I have hereunto set my hand at Miami,

15  Florida, this 2nd day of June, 2015.

16

17

                          /s/ Carly Horenkamp
18
                          Carly L. Horenkamp, RMR, CRR
19                        Certified Shorthand Reporter

20

21

22

23

24

25
```